# CHARLESTON

PROK, ADM'R. v. N. & W. RAILWAY CO.

Submitted February 2, 1915.  Decided February 23, 1915.

1.  RAILROADS—*Person on Track—Negligence—Question for Jury.*
    Whether it is negligence on the part of a railroad company, to
    run an engine or train of cars backwards, through a village, with-
    out some person on the tender or foremost car, to keep a lookout for
    persons who may happen to be on the track and take precautions
    against injury to them, generally depends upon the circumstances
    of the particular case, and is a question for jury determination.  (p.
    698).

2.  NEGLIGENCE—*Duty—Abnormal Conditions.*
    A general rule of duty, applicable under normal conditions, does
    not preclude the existence of exceptional ones, justified by abnormal
    conditions.  All grow out of the same general principle and are con-
    sistent in the large sense of the term.  (p. 698).

3.  EVIDENCE—*Documentary Evidence—Maps.*
    In the trial of a negligence case, it is not error to admit, as evi-
    dence, with a proper caution by the court, as to its purpose, a map
    of the place of the injury, showing approximately the locations and
    the relations of the various objects and places to one another and
    the material distances in figures, obtained by actual measurement,
    but not susceptible of verification by scaling the map.  (p. 699).

Error to Circuit Court, McDowell County.

Action by Joseph Prok, administrator, etc., against the
Norfolk & Western Railway Company.  Judgment for plain-
tiff, and defendant brings error.

*Affirmed.*

*Stokes & Sale,* and *Theodore W. Reath,* for plaintiff in
error.

*Cook, Litz & Harman* and *G. W. Howard,* for defendant
in error.

POFFENBARGER, JUDGE:

The principal question developed on this writ of error is
whether a railroad company, in running an engine backward
on its main line, through a village, is under duty to keep a

PROK v. RAILWAY CO.          [Feb. 1915.

lookout for children and trespassers, the situation being such as deprives the engineer and fireman of adequate view of the track at the point of danger.

Plaintiffs decedent, a little girl less than four years old, was struck and killed by an enormous engine of the defendant company, weighing 292,000 pounds, and used for helping coal trains over a heavy grade. She and another little girl, somewhat older, were walking along the west-bound track of the railway, in mining village of about 1,000 inhabitants, and very close to the end of a considerable curve, when this immense engine, coming around the curve, on its return from a trip up the grade, and running backward at the rate of about ten miles an hour and without any person on the rear end thereof to look out for persons on the track, struck them.

Owing to the curve, the length of the engine and tender and the size and width of the latter, the fireman could not see the track from his place of work, nor could the engineer at a point nearer than about 150 feet. Before they were struck, the children had walked on the track a distance of about 95 feet. Assuming the engineer, keeping a proper lookout, would have seen them, his view may have been obstructed by an east-bound passenger train for a portion of the time. Witnesses say the child was struck almost immediately after the passenger train had passed. But there is evidence tending to prove it was 340 yards east of the place of the accident at the time thereof, which affords ground for an inference of non-interference of that train with the engineer's view.

The general rule requiring railway companies to maintain, through their trainmen, such a lookout for trespassers on the track as is consistent with the proper discharge of their duties, is predicated of trains operated in the usual and ordinary way, trains running forward and affording opportunity to the engine men to see the track, or full trains running backward and affording the brakemen or flagman a like opportunity. This loose engine running backward was abnormal in this respect as well as in respect of its size and length. The general rule is founded upon the common knowledge of the frequency and inevitableness of the presence of trespassers upon railroad tracks, and springs out of necessity, the law having high regard for the safety of life, limb and property

and imposing duty to avoid injury to them, when it is reasonably practicable to do so. But for such regard, railway companies, in the use of their private property devoted to public use, need not keep any lookout at all. As it legally justifies the requirement of duty under the general rule, it may consistently require further duty under abnormal conditions created by the railways themselves. The tests of duty, in each case, the normal and the abnormal, are reason, practicability and the relative weight of burden or evil. The law frowns upon the destruction of a life that could have been saved with slight exertion or the imposition of a slight burden. Accordingly the courts hold railway companies to the duty of maintenance of a proper lookout on backing trains, cars and engines, in localities in which the presence of trespassers is reasonably to be apprehended, and leave it to the jury to say whether the circumstances of the particular case requires it. *Railway Company* v. *Daves,* 108 Va. 378; *Railway Co.* v. *Ward,* 4 Colo. 30; *Railroad Company* v. *Shearer,* 58 Ala. 672; *Southern R. Co.* v. *Shatman,* 4 Am. & Eng. Anno. Cas. 675, note; *Palmer* v. *Short Line R. Co.,* 16 *Id.* 229, note; 33 Cyc. 789; Sherman & Redfield Neg., sec. 464.

In view of testimony tending to prove the child's companion almost succeeded in her effort to effect a rescue, the jury could well infer the speed of the engine could have been sufficiently checked to enable her to do so, if such a lookout had been maintained, or that such warning as could have been given would sooner have apprised the children of the approach of the engine, and so enabled them to avoid injury. *Schoonover* v. *B. & O. R. Co.,* 69 W. Va. 560.

A map showing the location and distances, but not drawn to scale, was admitted in evidence over the objection of the defendant. The material distances noted on it were ascertained by actual measurement, but the map was not drawn so as to conform to them exactly. Nothing on it could possibly have misled the jury and, giving actual distances with their relation to points approximately located, it was no doubt helpful to the jury. They were advised by the court that it was to be considered only for the purpose of showing approximate locations. Thus explained it was properly admitted.

The rulings on instructions are in conformity with the legal principle herein stated.

Seeing no error in the judgment, we affirm it.

*Affirmed.*